UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MANDA F. W., | ) No. ED CV 18-1127-PLA |
| Plaintiff, | ) **MEMORANDUM OPINION AND ORDER** |
| v. | ) |
| ANDREWS M. SAUL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**I.**

**PROCEEDINGS**

Manda F. W.[1] ("plaintiff") filed this action on May 26, 2018, seeking review of the Commissioner's[2] denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on June 18, 2018, and June 20, 2018.

---

[1] In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and middle and last initials, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, the newly-appointed Commissioner of the Social Security Administration, is hereby substituted as the Defendant herein.

Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on April 15, 2019, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Submission under submission without oral argument.

## II.

## **BACKGROUND**

Plaintiff was born in 1960. [Administrative Record ("AR") at 157.] She has past relevant work experience as a secretary (administrative assistant). [Id. at 1161, 1195-96.]

On March 31, 2010, plaintiff protectively filed an application for a period of disability and DIB alleging that she has been unable to work since October 29, 2009. [Id. at 814; see also id. at 157-58.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [Id. at 87-88.] A hearing was held on January 10, 2012, and an unfavorable decision issued on February 16, 2012. [Id. at 874-81.] The ALJ found that plaintiff had the severe impairments of "major depressive disorder, anxiety order not otherwise specified, and alcohol abuse." [Id. at 876.] She found that plaintiff could perform a full range of work at all levels but she could only perform simple tasks, have no interaction with the public, and no tasks requiring hypervigilance. [Id. at 877.] She could not perform her past work but could perform the alternative occupations of hand packager (Dictionary of Occupational Titles ("DOT") No. 920.587-018), floor waxer (DOT No. 381.687-034), and laundry worker II (DOT No. 361.685-018). [Id. at 881.] On July 8, 2013, the Appeals Council denied plaintiff's request for review. [Id. at 886-88.]

Plaintiff appealed the decision by filing a civil action in this Court in case number ED CV 13-1626-PLA. [JS at 3.] On August 21, 2014, this Court remanded the matter for further proceedings, finding that the ALJ's step two determination regarding plaintiff's migraine condition was not supported by substantial evidence, and that the ALJ failed to provide clear and convincing reasons to discount plaintiff's subjective symptom testimony. [AR at 817-35.] Consistent with the Court's Order, the Appeals Council remanded the matter and a different ALJ held a hearing on September 30, 2015. [Id. 837-70.] On December 11, 2015, that ALJ issued another unfavorable

decision. [Id. at 797-807.] In that decision, the ALJ determined that plaintiff had the severe impairments of headaches, high blood pressure, depressive disorder, and anxiety disorder. [Id. at 799.] The ALJ also found that plaintiff could perform a limited range of light work with the following additional limitations:

> Non-complex routine tasks; no tasks requiring hypervigilance; no interaction with the public; no work hazards such as working at unprotected heights, operating fast or dangerous machinery, or driving commercial vehicles; no ladders, ropes, or scaffolds; and a static work environment (i.e. few changes on a day to day basis).

[Id. at 802.] She also found plaintiff could perform the alternative occupations of assembler of small products (DOT No. 706.684-042), inspector (DOT No. 559.687-074), and marker (DOT No. 209.587-034). [AR at 806.]

Plaintiff appealed that decision in this Court in case number ED CV 16-618-PLA. [Id. at 1217.] On March 19, 2017, this Court again remanded the matter for further proceedings, after finding that there was no evidence in the record to indicate that the ALJ considered plaintiff's severe impairment of migraine headaches, along with her mental health issues, in determining the effect of all of plaintiff's severe impairments on her work-related activities. The Court also noted that the ALJ on remand must reconsider plaintiff's subjective symptom testimony in accordance with Social Security Ruling ("SSR")[3] 16-3p. [Id. at 1203-15.]

On December 18, 2017, a hearing took place before a different ALJ, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [Id. at 1170-1202.] A vocational expert ("VE") also testified. [Id. at 1195-1200.] On March 26, 2018, the ALJ issued a partially favorable decision concluding that plaintiff was under a disability from October 29, 2009, the alleged onset date, through June 30, 2013. [Id. at 1157.] He found that as of July 1, 2013, medical improvement had occurred and that plaintiff "has not become disabled again since that date." [Id. at 1159, 1162.] On approximately May 26, 2018, the ALJ's decision became the final

---

[3] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

decision of the Commissioner. 20 C.F.R. § 404.984. This action followed.

## III.
## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.
## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting

42 U.S.C. § 423(d)(1)(A)).

A.   THE EVALUATION PROCESS

   1.   The Five-Step Evaluation Process

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920;

Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

### 2. The Eight-Step Evaluation Process After a Disability Finding

Once the Commissioner (or ALJ) finds a claimant to be disabled, a presumption of continuing disability arises. Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983) (citation omitted). To revoke benefits, "the Commissioner bears the burden of establishing that a claimant has experienced medical improvement that would allow him to engage in substantial gainful activity." McCalmon v. Astrue, 319 F. App'x 658, 659 (9th Cir. 2009) (citing Murray, 722 F.2d at 500). The Commissioner must follow an eight-step sequential evaluation process in determining whether the claimant's impairments have sufficiently improved to warrant a cessation of Disability Insurance Benefits. See 20 C.F.R. § 404.1594(f). The eight steps are as follows: (1) if the claimant is currently engaged in substantial gainful activity ("SGA"), disability has ended; (2) if not, and the claimant has an impairment or combination of impairments that meets or equals a listing, disability continues; (3) if the claimant does not meet or equal a listing, the ALJ will determine whether medical improvement has occurred; (4) if so, the ALJ will determine whether the improvement is related to the claimant's ability to work (i.e., to an increase in the claimant's RFC); (5) if no medical improvement -- or no improvement related to ability to work -- has occurred, disability continues, unless certain exceptions apply[4]; (6) if there has been medical improvement related to the claimant's ability to work, the ALJ will determine whether **all** the current impairments, in combination, are "severe"; if not, disability ends; (7) if the claimant meets the "severity" criteria, the ALJ will determine the current RFC, and, if the claimant is able to do past work, disability ends; (8) if the claimant remains unable to do past work, the ALJ will determine whether the claimant can do other work, given her RFC, age, education and past work experience. If so, disability ends. If not, disability continues. 20 C.F.R. § 404.1594(f).

---

[4] The exceptions include advances in medical technology or vocational therapy related to the claimant's ability to work; new or improved diagnostic techniques or a prior evaluation error indicating that the impairment is not as disabling as once thought; evidence that the claimant is engaging in SGA; evidence of fraud in obtaining benefits; and evidence that the claimant failed to follow prescribed treatment. 20 C.F.R. § 404.1594(d)-(e), (f)(5).

**B.     THE ALJ'S APPLICATION OF THE EVALUATION PROCESSES**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 29, 2009, the date she became disabled.[5] [AR at 1150.] At step two, the ALJ concluded that from October 29, 2009, through June 23, 2013, the period during which plaintiff was under a disability, plaintiff had the severe impairments of headaches, high blood pressure, depressive disorder, and anxiety disorder. [Id. at 1151.] At step three, the ALJ determined that from October 29, 2009, through June 30, 2013, plaintiff did not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id. at 1152.] The ALJ further found that from October 29, 2009, through June 30, 2013, plaintiff retained the residual functional capacity ("RFC") to perform the full range of work at all exertional levels but with the following nonexertional limitations:

> [S]imple, routine tasks; no tasks requiring hypervigilance; no interaction with the public; no exposure to hazards such as working at unprotected heights, operating fast or dangerous machinery, or driving commercial vehicles; no ladders, ropes, or scaffolds; work in a static work environment (i.e., few changes on a day-to-day basis); likely to be off task more than 10 percent of the workday; and likely to be absent more than 2 days per month.

[Id. at 1152-53.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that from October 29, 2009, through June 30, 2013, plaintiff was unable to perform her past relevant work as a secretary (administrative assistant). [Id. at 1156, 1196-98.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that from October 29, 2009, through June 30, 2013, there were no jobs existing in significant numbers in the national economy that plaintiff could perform and, therefore, plaintiff was disabled during that period.[6] [Id. at 1157.] The ALJ then determined that plaintiff has not developed any new impairment or impairments since July 1, 2013, and that her current severe impairments are the same as those that were present from October 29, 2009, through June 30, 2013. [Id. at 1158.]

---

[5]     The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through March 31, 2016. [AR at 1150.]

[6]     The ALJ further found that plaintiff's substance use disorder is not a contributing factor material to the determination of disability. [AR at 1157-58.]

He found that medical improvement relating to plaintiff's ability to work occurred as of July 1, 2013, the date plaintiff's disability ended. [Id. at 1159.] Beginning July 1, 2013, the ALJ determined that plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> [S]imple, routine tasks; no tasks requiring hypervigilance; no interaction with the public; no exposure to hazards such as working at unprotected heights, operating fast or dangerous machinery, or driving commercial vehicles; no ladders, ropes, or scaffolds; work in a static work environment (i.e., few changes on a day-to-day basis); likely to be off task up to 5 percent of the workday; and likely to be absent 1 time per month.

[Id.] The ALJ determined that plaintiff is still unable to perform her past relevant work as a secretary (administrative assistant). [Id. at 1161.] He further noted that since July 1, 2013, her age category changed to an individual closely approaching advanced age. [Id.] Based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that beginning July 1, 2013, there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "laundry laborer" (DOT No. 361.687-018), as a "cleaner, laboratory equipment" (DOT No. 381.687-022), and as a "garment folder" (DOT No. 789.687-066). [AR at 1162, 1196-98.] Accordingly, the ALJ determined that plaintiff's disability ended on July 1, 2013, and she has not become disabled again since that date. [AR at 1162.]

## V.
## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he found significant medical improvement as of July 1, 2013. [JS at 8.] As set forth below, the Court agrees with plaintiff and remands for further proceedings.

**A. THE ALJ'S FINDING OF MEDICAL IMPROVEMENT**

In finding that medical improvement had occurred as of July 1, 2013, the ALJ stated the following:

> There has been little treatment for [plaintiff's] headaches and high blood pressure

since her hospitalization from June 28, 2013 to June 30, 2013. She had emergency department visits, but they did not occur often. On April 11, 2017 and May 15, 2017, [plaintiff] told her psychotherapist she had "headaches, dull and there." The lack of treatment is evidence of a decrease in [plaintiff's] headache symptoms. Thus, medical improvement occurred as of July 1, 2013, the date [plaintiff's] disability ended.

[AR at 1159.]

Plaintiff contends that the ALJ's finding of medical improvement as of July 1, 2013, "is arbitrary and not supported by substantial evidence." [JS at 8.] Specifically, plaintiff observes that the ALJ "somehow" found that on July 1, 2013, plaintiff "would only be off task 5% of the time" -- down from 10% on June 30, 2013 -- and that she would only miss one day of work per month -- down from "more than 2 days per month" on June 30, 2013. [Id. at 9 (citing AR at 1153, 1159).] She argues that these conclusions are not consistent with any evidence of record, and there is no objective or subjective evidence in the record supporting the ALJ's finding of change in plaintiff's off-task time and absences from June 30, 2013, to July 1, 2013. (Id.). She suggests that this "arbitrary finding[] of medical improvement" amounts to nothing more than the "Administration's ongoing desire to deny ongoing benefits in this case while simultaneously appeasing Plaintiff and this Court by appearing to take Plaintiff's headaches into consideration for at least a limited period of time," and is inappropriate and unfair to plaintiff. (Id. at 10).

Plaintiff argues that the ALJ failed to properly consider the impact of her headaches and her subjective complaints subsequent to July 1, 2013. (Id.). She notes that the ALJ found that her severe impairments had not changed, and there had been no significant change in her mental functioning; yet, the ALJ determined that plaintiff would be "off task only 5% of the work day, and would miss only one day per month." [Id.] Additionally, as acknowledged by the ALJ, plaintiff testified at the hearing that her headache condition remained unchanged from the previous hearing, she has mild headaches regularly, her severe headaches are unpredictable and occur one to two times a week, and when the severe headaches occur she has to take her medications and "lay down for a few hours to make the headache go away." [Id. (citing AR at 1160).] Plaintiff cites to several post-July 1, 2013, medical records to support her claims:

(1) a November 18, 2013, emergency room visit complaining of a headache that had

9

lasted for four days [AR at 1119];

(2) an April 25, 2016, treatment note by Antonious Brandon, Ph.D., a psychotherapist at the Riverside Psychiatric Medical Group, reflecting that plaintiff was continuing to experience "frequent headaches, dizziness/vertigo, memory difficulties (loss), and muscle spasms or tremors but no other neurological issues" [id. at 1359];

(3) a March 14, 2017, treatment note by Dr. Brandon, again noting that plaintiff's mental impairments "coupled with migraines" were substantially impacting on her ability to perform activities of daily living as well as work-related activities [id. at 1372];

(4) a March 23, 2017, treatment note by Dr. Brandon reflecting that plaintiff "finds that she is unable to maintain a job because of her emotional disability, cognitive decline (short term memory) coupled with migraines" [id. at 1374]; and

(5) a May 15, 2017, treatment note by Dr. Brandon reflecting that plaintiff's headaches were "dull and there" [id. at 1378].

[JS at 12-13.][7] Plaintiff also cites to her hearing testimony, where, among other things, she explained the following: she used to get Maxalt from the County for her migraines, and once or twice a year she would be treated with IV medication, but her insurance changed and now she can only take her medicine and lie down; she experiences "cluster" headaches at least once a month, they last sometimes up to two weeks, and then they go away for anywhere from two to four weeks; once or twice a week she experiences a "somewhat milder" headache that requires her to lie down for a few hours; she has "learned to live" with her headaches and "it has to be extremely bad for [her] to go in" for a shot; there does not seem to be anything in particular that triggers the headaches; her symptoms have been the same since 2009; since her insurance changed she had not received the IV treatment "in a couple years" and now only gets a shot; and she does not

---

[7] As discussed supra (see Discussion § V.B), there are additional post-2013 treatment notes reflecting plaintiff's treatment for headaches.

contact a doctor for her headaches anymore because since she stopped working, "the insurance kind of plays a part on what I can do and what I can't do." [JS at 13-19 (citing AR at 1181-88).]

Plaintiff contends that the ALJ's reliance on the March 24, 2015, opinion of Ernest C. Levister, Jr., M.D., who performed an internal medicine evaluation, was flawed. [Id. at 11 (citing AR at 1077-88, 1161).] In his report, Dr. Levister acknowledged plaintiff's complaints of headaches and cluster migraines -- which she described to him as becoming worse over time -- as well as her "chronic treatment for depression and for migraines." [AR at 1077, 1080-81, 1088.] He explicitly determined that plaintiff was not malingering. [Id. at 1088.] Dr. Levister concluded that plaintiff's "areas of incapacity are emotionally driven," and "based on the currently available information the driving force is not internal in nature," rather, her issues "are emotional in nature." He then concluded that plaintiff "can work in her former job." [Id.] The ALJ gave "substantial weight" to Dr. Levister's March 24, 2015, report:

> Although Dr. Levister opined [plaintiff] could work in her former job, his opinion was from an internal medicine perspective, his area of specialization. As discussed, [plaintiff] has received little treatment for her headaches and blood pressure since the disabled period. [She] told Dr. Levister she was taking Maxalt and Motrin as needed for migraines. Thus, there is support for being off task and absent from work less often.

[Id. at 1161.]

Plaintiff submits that Dr. Levister's report is unclear with respect to how he considered the impact of plaintiff's headaches on her ability to persist at work activity and, in any event, his *2015* report has "nothing to do with the ALJ's arbitrary date of medical improvement of July 1, *2013*," two years earlier. [JS at 11-12 (emphasis added).] She argues that the ALJ did not provide clear and convincing reasons for rejecting her subjective symptom testimony, and failed to identify what testimony "is not credible and what evidence undermines [her] complaints." [Id. at 19-20 (citing Lester, 81 F.3d at 834).] Accordingly, the ALJ's reason for discounting her testimony were not "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit" her testimony. [Id. at 20.] Moreover, plaintiff argues that the ALJ cannot rely only on the absence of

11

supporting objective medical evidence to reject her testimony. [Id.]

Defendant responds that the ALJ reasonably found a period of disability and that plaintiff experienced medical improvement related to her ability to work. [JS at 21-22.] Defendant submits that the following medical evidence, all dated after July 1, 2013, supports the ALJ's findings:

> (1) Dr. Levister's March 2015 report found that plaintiff's functional limitations were emotionally driven and she did not have any organic impairments that would preclude her from working [id. at 22 (citing AR at 1077-88)];
>
> (2) the September 2015 testimony and opinion of John David Sabow, M.D., a neurologist, that plaintiff's headache symptoms appeared to be linked to her hypertension, and the objective evidence did not indicate that her headaches were disabling [id. (citing AR at 842-49)]; and
>
> (3) the September 2015 testimony and opinion of David M. Glassmire, Ph.D., a "psychological expert," that due to plaintiff's depressive disorder and anxiety, plaintiff was capable of noncomplex, routine tasks, that did not require hypervigilance or interaction with the public.

[Id. (citing AR at 1153-54, 1156).] Defendant argues that the ALJ "reasonably" gave some weight "to Dr. Glassmire's opinion of plaintiff's mental limitations, as the most restrictive, but with further restriction to only 'simple, routine tasks,'" and gave "great weight to Dr. Levister's opinion -- which was uncontradicted during the relevant time-period -- because it was consistent with the record evidence that Plaintiff's primary issues were 'emotionally related' (i.e., related to depression and 'binge alcohol intake')." [Id. at 23 (citing AR at 1153-54, 1160).] Defendant further notes that Dr. Sabow had also opined that plaintiff's primary issues pertained to emotional symptoms and that her headache symptoms "did not have the characteristics of intractable migraine headaches and were most likely linked to a problem with her blood pressure." [Id. (citing AR at 848-49).] Defendant submits that the ALJ accommodated plaintiff's mental impairment as well as her periodic headaches in his RFC determination. [Id.] He also found no support in the record for plaintiff's claim of disabling limitation after June 30, 2013, based on the fact there had been little treatment for her headaches and high blood pressure since her hospitalization from June 28-30, 2013. [Id. at 23-24 (citing AR at 1159).] Defendant notes that after July 1, 2013, plaintiff only sought treatment for "exacerbated symptoms due to headaches," in November 2013 and January 2014, and those treatment notes also "indicated hypertension." [Id. at 24 (citing AR at 1159,

1160).] Although plaintiff complained of "dull" headaches on April 11, 2017, and May 15, 2017, her complaints were made to her psychotherapist, Dr. Brandon, and not to "a neurologist or other headache specialist." [Id. (citing AR at 1159, 1378).] Defendant also notes that Dr. Brandon was treating plaintiff for depression and, contrary to plaintiff's statement "did not diagnose her with a 'main impairment' of headaches," and did not opine regarding "any work-related functional limitations or submit a medical source statement on Plaintiff's behalf." [Id.] For that reason, defendant suggests, it was reasonable for the ALJ to rely on Dr. Glassmire's opinion, but "with the further restriction to only 'simple, routine, tasks.'" [Id. (citing AR at 1153-54).]

Defendant also suggests that the RFC determination was consistent with, and even "more restrictive than all of the medical source opinions during the relevant time-period," and was a "reasonable synthesis of this evidence." [Id.] She notes that plaintiff's arguments rest largely on her own subjective statements, which the ALJ properly discounted and, in any event, the "ALJ pointed to affirmative evidence of malingering." [Id. at 25 (citing AR at 1155, 1346).] Accordingly, defendant argues that not only were plaintiff's statements inconsistent with the record as a whole, but because of the evidence of malingering -- including a diagnosis of malingering in December 2010 and again in June 2013 -- the ALJ properly discounted her testimony because of the inconsistencies between her claims and "objective presentation on observation." [Id. at 26 (citations omitted).] Indeed, defendant states that the affirmative evidence of malingering undermined plaintiff's claim of excess symptoms and limitations. [Id. at 28.] Finally, defendant notes that if the Court agrees with plaintiff that she was more limited after June 2013, the evidence reflects that her alcohol abuse and binge alcohol use contributed to her limitations. [Id. (citing AR at 752, 1087, 1151).] Defendant notes that plaintiff's June 2013 hospitalization also "appears to have been linked to mixing alcohol with prescription medication." [Id. (citing AR at 1312 (on admission plaintiff admitted she drank a glass of wine with her medication)).] Defendant argues, therefore, that although the ALJ did *not* find plaintiff's alcohol use to be a severe impairment, it was "interrelated with her symptoms, which would require additional administrative analysis if she were to be found disabled after June 2013" to determine whether her alcohol use "is the primary factor

causing [her] limitations." [Id. at 28, 31 (citations omitted).]

**B.     ANALYSIS**

The ALJ's determination of medical improvement on July 1, 2013, was based primarily on the fact that after June 30, 2013, there was little evidence in the record reflecting complaints of or treatment for migraines or blood pressure issues until two treatment visits to Dr. Brandon in 2017. [AR at 1159 (noting Dr. Brandon's April 11, 2017, and May 15, 2017, treatment notes).] The ALJ deemed the lack of records to be "evidence of a decrease" in plaintiff's symptoms. [Id.]

"A claimant's subjective symptom testimony may be undermined by an 'unexplained, or inadequately explained, failure to [seek treatment or] follow a prescribed course of treatment.'" Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) (quoting Fair, 885 F.2d at 603); see also SSR 16-3p, 2017 WL 5180304, at *9 (if the frequency or extent of treatment is not comparable with the degree of the claimant's subjective complaints, the ALJ may find that the alleged intensity and persistence of symptoms are inconsistent with the overall record, but only *after* "considering possible reasons [the claimant] may not comply with or seek treatment consistent with the degree of her complaints"). Failure to assert a reason for not seeking or following treatment "can cast doubt on the sincerity of the claimant's pain testimony." See Trevizo, 871 F.3d at 679 (quoting Fair, 885 F.2d at 603) (internal quotation marks omitted). However, a claimant may not be denied benefits because of her "failure to obtain treatment [s]he cannot obtain for lack of funds." Id. at 681 (quoting Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995)).

Here, the ALJ acknowledged (without citation) that after June 30, 2013, plaintiff "had emergency department visits," but also stated that those visits "did not occur often." [AR at 1159.] He also referred to two of Dr. Brandon's 2017 treatment notes (April 11 and May 15) reflecting plaintiff's complaints of headache symptoms, but did not mention his three 2016 treatment notes, two of which specifically mentioned her migraines and headaches [id.; see also AR at 1358-66]; neither did he mention Dr. Brandon's other *nine* 2017 treatment notes, six of which specifically mentioned plaintiff's migraines and headaches or referenced other unspecified "medical problems"

14

or "physical limitations." [See AR at 1367-87.] In fact, the ALJ relied on a *lack* of medical treatment after July 1, 2013, to support his finding of medical improvement despite a great deal of testimony by plaintiff at the hearing involving her change in insurance as a reason she no longer called her doctors or went to the emergency room when she experienced severe headaches. Plaintiff's explanation regarding her change in insurance provided a reasonable explanation for why she did not seek treatment after June 30, 2013, "consistent with the degree of her complaints," and the opinion fails to demonstrate that the ALJ considered plaintiff's explanation for her failure to seek treatment for her headaches after June 30, 2013. Thus, the ALJ's finding of medical improvement as of July 1, 2013 (one day after plaintiff was released from a four-day hospital stay for her blood pressure and headache symptoms), based on a lack of treatment, was not supported by substantial evidence.

Defendant's suggestion that Dr. Levister's March 2015 report, and the September 2015 hearing testimony of Dr. Glassmire and Dr. Sabow, support the ALJ's finding of medical improvement on July 1, 2013, is baseless. In fact, the ALJ specifically gave "little weight" to Dr. Sabow's opinion that plaintiff's headaches were not disabling, precisely because they *were* disabling up to June 30, 2013. [Id. at 1156.] The ALJ further noted that Dr. Sabow's opinion that plaintiff's headaches were not the intractable type was "inconsistent with the recurring complaints at outpatient and emergency visits during the disabled period." [Id.] Similarly, defendant's suggestion that the ALJ relied on the September 2015 testimony and opinion of the psychological expert, David M. Glassmire, Ph.D. to find medical improvement on July 1, 2013, was not a reason cited by the ALJ and, in any event, the ALJ determined Dr. Glassmire's opinion was not restrictive enough and the ALJ further limited plaintiff to simple, routine tasks. [Id. at 1153-54.] And, the ALJ actually *discounted* Dr. Levister's report to the extent he determined plaintiff could perform her past relevant work because Dr. Levister's "opinion was from an internal medicine perspective." [Id. at 1161.] The ALJ determined medical improvement had occurred -- not because of any of these reports -- but because plaintiff had received little treatment for her headaches and blood pressure subsequent to her four-day hospitalization at the end of June 2013. [Id. at 1161.]

Likewise, defendant's suggestion that the ALJ relied on affirmative evidence of malingering to discount plaintiff's subjective symptom testimony regarding her headaches is also unfounded. Although the ALJ mentioned that evidence [see, e.g., AR at 1155], he also specifically stated that "[a]lthough there was mention of malingering" during plaintiff's June 2013 hospitalization, "the evidence of record shows [plaintiff] often sought treatment for unabated headache complaints." [AR at 1156.]

"Long-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered *by the ALJ* -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009) (emphasis added, citation omitted); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision."). The Court will not consider reasons for discounting plaintiff's subjective symptom testimony that were not given by the ALJ in the Decision. See Trevizo, 871 F.3d at 677 & nn.2, 4 (citation omitted).

As defendant has not met his burden of showing that plaintiff experienced medical improvement that would allow her to engage in substantial gainful activity, remand is warranted on this issue.

## VI.
## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there is an outstanding issue that must be resolved before a final determination can be made. Because the Court determines that the ALJ's finding of medical improvement after June 30, 2013, was not supported by substantial evidence, on remand the ALJ shall specifically determine whether plaintiff did in fact medically improve on or after that date.[8]

## VII.
## **CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: June 18, 2019

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[8] Nothing herein is intended to disrupt (1) the ALJ's finding that plaintiff was disabled from October 29, 2009, through *at least* June 30, 2013; (2) the ALJ's determination that after June 30, 2013, plaintiff's severe impairments were *at least* the same as those present from October 29, 2009, through June 30, 2013; (3) the ALJ's determination that plaintiff's "substance use disorder(s) is not a contributing factor material to the determination of disability"; or (4) the ALJ's step four finding that plaintiff is unable to return to her past relevant work.